IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESIE R. JONES,

      Plaintiff,

      v.

COMMISSIONER,
Social Security Administration,

      Defendant.

_____

**Civ. No. 1:13-cv-00067-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Jesie R. Jones brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income payments (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issues before this Court are (1) whether the ALJ properly considered witness and physician testimony and (2) whether the ALJ erred in formulating and applying plaintiff's Residual Functional Capacity (RFC) under step four and five of the sequential evaluation. Because the ALJ properly considered the relevant testimony and properly formed and applied plaintiff's RFC, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

Jones applied for SSI on October 15, 2008, alleging disability beginning October 15, 2008. Tr. 11, 101, 111. This claim was denied initially on March 9, 2009, and upon reconsideration on August 17, 2009. Tr. 11, 61, 69. Plaintiff timely requested a hearing before an

1 – OPINION AND ORDER

administrative law judge (ALJ), and appeared before the Honorable Marilyn S. Mauer on April

26, 2011. Tr. 11, 25–58, 72. ALJ Mauer denied plaintiff's claims by written decision dated July

11, 2011. Tr. 11–20. Plaintiff sought review from the Appeals Council, which was subsequently

denied on November 19, 2012, thus rendering the ALJ's decision final. Tr. 1–3, 7. Plaintiff now

seeks judicial review.

Plaintiff, born in 1989, was 19 years old when he filed his application for SSI, tr. 101,

and 22 years old at the time of his hearing, tr. 30. Plaintiff completed his sophomore year of high

school and has earned 13.5 credits toward obtaining his General Educational Development

(GED). Tr. 30–31, 205. Plaintiff alleges disability due to "borderline intellectual functioning, a

personality disorder with avoidant and dependent features, and amblyopia in the right eye with

type III Duane's retraction syndrome and hypertropia." Pl.'s Br. 1, ECF No. 13; *see also* tr. 111

(alleging "Learning disabilities, right eye problems.").

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on

proper legal standards and the legal findings are supported by substantial evidence on the record.

*See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

2004). To determine whether substantial evidence exists, this Court reviews the administrative

record as a whole, weighing both the evidence that supports and that which detracts from the

ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine

whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests

upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with

2 – OPINION AND ORDER

respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id*.

Plaintiff contends that: (1) the ALJ improperly rejected plaintiff's testimony; (2) the ALJ improperly rejected lay witness testimony; (3) the ALJ improperly rejected examining doctor opinion; and (4) the ALJ's improperly excluded functional limitations in plaintiff's RFC assessment.

## I. Plaintiff's Testimony

Plaintiff contends that the ALJ improperly rejected his testimony, including testimony related to his vision impairment and concentration problems. Pl.'s Br. 9–10, ECF No. 13. In response, defendant argues that substantial evidence supports the ALJ's credibility findings. Def.'s Br. 5–8, ECF No. 17.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR § 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of [his] symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[1] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-

---

[1] "The Cotton test imposes only two requires on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

3 – OPINION AND ORDER

guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

First, as to plaintiff's eye impairment, Duane's syndrome, he testified at his administrative hearing that he was unable to "see out of [his] right eye." Tr. 36. Plaintiff subsequently modified this statement, by indicating that he had previously reported having "some vision" in his right eye. Tr. 41. However, plaintiff noted that his attempts to use the eye resulted in headaches "twice a week." *Id*. Plaintiff successfully treated most of his headaches with Tylenol or Ibuprofen, but about "once a month," treatment for his headaches required him to "lay down and listen to music" for "30 minutes." Tr. 42.

The ALJ, in evaluating plaintiff's eye impairment, found that "the evidentiary record fails to support" plaintiff's alleged limitations to the extent they were inconsistent with plaintiff's RFC. Tr. 17; *see also* tr. 15 (identifying plaintiff's RFC). In support of this finding, the ALJ provided specific, clear and convincing reasons. *See* tr. 16–17 (citing tr. 200, 244–46). For example, on February 13, 2009, plaintiff's treating ophthalmologist, Loren Barrus, noted that plaintiff "has good corrected vision" despite his eye impairment. Tr. 202; *see also* tr. 244 (indicating that plaintiff's "best corrected visual acuity was 20/70 in the right eye and 20/20 in the left eye."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("medical evidence is . . . a relevant factor in determining the severity of the claimant's pain and its disabling effects."). In addition, plaintiff visited his eye doctor "once every two years," tr. 32, and went substantial periods of time without wearing his glasses, *see* tr. 203 (indicating that plaintiff went "approximately 2 ½ years" without wearing his glasses.); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that "unexplained, or inadequately explained, failure to seek or

4 – OPINION AND ORDER

follow a prescribed course of treatment" is one form of evidence that may be sufficient to discredit an allegation of pain). To the extent that the ALJ failed to address plaintiff's allegations of undiagnosed headaches, this omission was not a reversible error. *See, e.g.*, *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008). As discussed *infra* §§ II–IV, the ALJ's RFC findings were based on substantial evidence in the record. *See also infra* § I (discussing plaintiff's daily activities).

Second, as to plaintiff's concentration problems, this Court is not persuaded that the ALJ rejected plaintiff's testimony. Plaintiff testified that he has "difficulty following instructions," gets "distracted easily," tr. 33., and gets "side-tracked to doing other things," tr. 35. However, the ALJ found that "with regard to concentration, persistence or pace, the claimant has *moderate difficulties*." Tr. 14 (emphasis added). These moderate difficulties were reflected in plaintiff's RFC: "tasks requiring simple reasoning that can be learned in 30 days or less" and "limited coworker contact and no public contact due to distraction." Tr. 15. To the extent that "moderate difficulties" arguably do not reflect plaintiff's testimony, the ALJ again provided specific, clear and convincing reasons. *See, e.g.*, tr. 17 (citing 204–205, 218, 233, 255, 260–61, 264). For example, plaintiff engaged in numerous daily activities, including: skateboarding, part-time work (car detailer and skate shop), studying for his GED program, using an electric wood chopper for up to an hour, cleaning his room, washing the dishes, vacuuming, cooking (e.g., TV dinners and fries), and to a lesser extent, shopping. Tr. 30–34, 36–40; *see also* tr. 17 (citing tr. 218); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (finding that a claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" evidenced an ability to work). Moreover, Dr. Tibbitts concluded that plaintiff would not have difficulty understanding and remembering simple instructions, despite limitations in

5 – OPINION AND ORDER

concentration and attention. Tr. 17 (citing 207); *see also* tr. 231 (indicating that plaintiff has moderate difficulties in maintaining concentration, persistence, or pace); tr. 255 (same); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider . . . testimony from physicians . . . ." (citations omitted)).

## II. Lay Witness Testimony

Plaintiff contends the ALJ improperly rejected the lay witness testimony of Alexandria Paul. In particular, plaintiff argues that the ALJ unfairly characterized Ms. Paul's report. Pl.'s Br. 13–14, ECF No. 13. In response, defendant contends that the ALJ reasonably evaluated Ms. Paul's testimony. Def.'s Br. 11, ECF No. 17.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)).

Ms. Paul, in her function report, tr. 151–158, indicated that plaintiff engaged in a number of activities, including: socializing; playing games; housework (if told); babysitting; chopping wood; maintaining personal care without problems; limited cooking (e.g., meat, Top Ramen, vegetables, and potatoes); washing dishes; doing laundry; grocery shopping; watching television; skateboarding; and attending church. Ms. Paul also noted that plaintiff had difficulty paying attention, tr. 152, needed encouragement to remain focused on house and yard work, tr. 153, and needed help on difficult recipes, tr. 156. The ALJ, in considering Ms. Paul's function report, found:

> Ms. Paul, who is the claimant's friend, recounted many tasks and activities that the claimant performed, such as helping to babysit, chopping wood, performing personal hygiene chores, preparing simply meals, washing dishes, doing the laundry, shopping, watching television, riding skateboards, and "hanging out" with friends and family. Her description indicated a *rather normal level of function* for the claimant.

Tr. 18 (emphasis added). Although plaintiff disagrees with this characterization, this Court is not persuaded that the ALJ rejected Ms. Paul's report. Rather, the ALJ determined at step three that plaintiff had *moderate* difficulties in concentration, persistence or pace; limiting plaintiff to "simple repetitive instructions and tasks." Tr. 14; *see also* tr. 15 (finding that plaintiff should have "limited coworker contact and no public contact due to distraction). Even were this Court to identify differences between "moderate" difficulties and the restrictions identified by Paul, this Court would still find the ALJ's interpretation of the evidence to be rational. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The activities described by Paul, in contrast to the more limited activities described by plaintiff himself, can rationally be interpreted to suggest a "*rather* normal level of function for the claimant." In fact, the ALJ discussed the differences between Paul's report and plaintiff's testimony regarding his skateboarding and wood chopping habits. *See* Tr. 18. Thus, to the extent that the ALJ rejected portions of Paul's testimony, the ALJ provided specific, clear and convincing reasons.

### III. Examining Physician Opinion

Plaintiff contends that the ALJ erred in her consideration of Dr. Tibbitts's opinion. In particular, plaintiff contends that the ALJ improperly rejected Dr. Tibbitts's assessment of

plaintiff's Global Assessment of Functioning (GAF) score[2] and his diagnosis of plaintiff's

personality disorder with avoidant and dependent features.[3] Pl.'s Br. 11–12, ECF No. 13. In

response, defendant contends that the ALJ properly considered Dr. Tibbitts's opinion. Def.'s Br.

9, ECF No. 17.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state

clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*,

427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.

1995)). "If a treating or examining doctor's opinion is contracted by another doctor's opinion, an

ALJ may only reject it by providing specific and legitimate reasons that are supported by

substantial evidence." *Id*. (citation omitted). When evaluating conflicting medical opinions, an

ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id*. (citing

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Dr. Tibbitts, in conducting plaintiff's psychological evaluation, diagnosed plaintiff as

"AXIS V. GAF 48." Tr. 207. In summarizing his overall diagnosis (including AXIS II–IV), Dr.

Tibbitt's noted that plaintiff "would have difficulty in an employment situation," "struggle with

complex or detailed instructions," and "has difficulty with concentration and attention." Tr. 207.

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citing *Diagnostic and Statistical Manual of Mental Disorders* 20 (rev. 3d ed. 1987)). A GAF score includes two components: symptom severity and functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 32 (rev. 4th ed. 2000) (internal quotation marks omitted). A GAF score between 41 and 50 "describes serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting)" and includes "any impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." *Id*.

[3] "A Personality Disorder is an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time, and leads to distress or impairment." *Diagnostic and Statistical Manual of Mental Disorders* 685 (rev. 4th ed. 2000). An Avoidant Personality Disorder "is a pattern of social inhibition, feelings of inadequacy, and hypersensitivity to negative evaluation." *Id*. A Dependent Personality Disorder "is a pattern of submissive and clinging behavior related to an excessive need to be taken care of." *Id*.

8 – OPINION AND ORDER

The ALJ, having reviewed Dr. Tibbitts's evaluation, found "[Dr. Tibbitt's] conclusion, which is consistent with other opinions in the medical record, earns weight in determining the residual capacity as Dr. Tibbitts actually saw and talked with the claimant." Tr. 17 (citing 203–208). The ALJ further noted:

> I recognize that Dr. Tibbitts' assessment of the claimant's GAF was 48: a score that was cited by [Megan Nicoloff, Psy. D] (Ex. 3F and 6F). However, the GAF score, at best, is only a picture of the claimant's status at a single point in time, rather than a longitudinal analysis, thereby minimizing its value in determining the claimant's residual functional capacity.  Furthermore, as noted by Dr. Nicoloff, the GAF score of 48 was based on other non-psychological factors (Ex. 7F).

Tr. 18. Plaintiff contends that this GAF score "should have been credited for the time that it was assessed." Pl.'s Br. 12, ECF No. 13.

Plaintiff's GAF score "does not have a direct correlation to the severity requirements in [the] mental disorders listing."  Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764–765 (Aug. 21, 2000). The ALJ "recognized" plaintiff's GAF score, but explicitly identified "value" limitations in incorporating this score into plaintiff's RFC. As noted by the Dr. Nicoloff, the GAF score "is based on other non psychological problems. [Plaintiff's] function per [Activities of Daily Living] shows greater ability then what Dr. Tibbitts indicated[.] [The GAF score] is not given full weight[.]" Tr. 233; *see also Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). To the extent that plaintiff's RFC can be interpreted to have excluded his GAF score, the ALJ provided clear and convincing reasons supported by substantial evidence. *See also Bonk v. Astrue*, No. 3:11–CV–00637–BR,

9 – OPINION AND ORDER

2012 WL 5830392, at *11 (D. Or. Nov. 16, 2012) (noting that "an ALJ's failure to address

specific GAF scores does not constitute legal error[.]" (citation omitted)).

Dr. Tibbitts also diagnosed plaintiff with "AXIS II 301.9 Personality Disorder NOS[4]

(avoidant and dependent features)." Tr. 207; *see also supra* note 3 (defining Personality

Disorder). Pursuant to step two, the ALJ declined to recognize plaintiff's diagnosed Personality

Disorder as a severe impairment. *See* Tr. 13–14. The ALJ found:

> The medical record also includes mention of a personality disorder. For
> instance, Dr. Tibbitts listed this impairment as NOS while medical
> consultant Megan Nicoloff, Psy. D., listed it in her completion of a
> psychiatric review technique form and mental residual functional capacity
> assessment (Ex. 6F and 7F). However, *these diagnoses were
> unaccompanied by any discussion of findings in support of its existence*. I
> conclude the diagnosis is based on the claimant's status as a sex offender,
> but there is no current indication of the claimant continuing to engage in
> such behavior. The claimant did not establish personality disorder NOS as a
> severe impairment.

*Id.* (emphasis added); *see also Tonapetyan*, 242 F.3d at 1149 (finding that a physician's opinion

"is not binding on an ALJ with respect to the existence of an impairment."). Plaintiff contends

that these findings were in error. Plaintiff does *not* contest that Dr. Tibbitts's diagnosis was

unaccompanied by any discussion of findings in support of its existence. Rather, plaintiff directs

this Court's attention to other "consistent" factors present in earlier parts of the evaluation. Pl.'s

Br. 12, ECF No. 13. (citing tr. 204–207). These other factors include: plaintiff did not have a

driver's license because he failed to bring in appropriate documents; plaintiff failed to re-register

---

[4] A Personality Disorder Not Otherwise Specified (NOS) is defined as:

> [A] category provided for two situations: (1) the individual's personality pattern meets the
> general criteria for a Personality Disorder and traits of several different Personality
> Disorders are present, but the criteria for any specific Personality Disorder are not met; or
> 2) the individual's personality pattern meets the general criteria for a Personality Disorder,
> but the individual is considered to have a Personality Disorder that is not included in the
> Classification (e.g., passive-aggressive personality disorder).

*Diagnostic and Statistical Manual of Mental Disorders* 685 (rev. 4th ed. 2000).

10 – OPINION AND ORDER

for his GED program; plaintiff was not a good historian and demonstrated very little spontaneity; plaintiff had limited experience in managing a household because of insufficient financial resources; and plaintiff had very limited adaptive features. *Id.* (citing tr. 204–207); *but see Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("[T]he regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone." (citation and internal quotation marks omitted)).

The ALJ, in assessing the "Supportability" of Dr. Tibbitts's opinion, *see* 20 C.F.R. § 416.927(c), was entitled to rationally interpret the evidence available, *Burch*, 400 F.3d at 679. As to the factors identified, Dr. Tibbitts explicitly linked two of these factors with plaintiff's status as a sex offender. *See* tr. 204 ("Also interfering with his school attendance were legal problems . . . . Jesie's legal problem contributed to his lack of academic achievement."). In contrast to the limited attention given to the factors identified by plaintiff, Dr. Tibbitts discussed plaintiff's legal problems in at least eight different paragraphs, including four paragraphs focused exclusively on plaintiff's treatment and reporting requirements. *See* tr. 204–205. The ALJ reasonably and rationally found that Dr. Tibbitts's diagnosis was based on the claimant's status as a sex offender. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) ("Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely for the Secretary." (citation and internal quotation marks omitted)). The ALJ, in noting that there was "no indication of the claimant continuing to engage in such behavior," provided clear and convincing reasons supported by substantial evidence in rejecting the diagnosis. *See id.* ("[T]he ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." (citation and internal quotation marks omitted)).

11 – OPINION AND ORDER

## IV. RFC Limitations

The ALJ called Vocational Expert (VE) Steven Cardinal to testify as to whether plaintiff

was capable of making an adjustment to other work. Tr. 47–57. The ALJ asked VE Cardinal a

series of hypothetical questions detailing plaintiff's limitations. These questions restricted

plaintiff to:

> [T]asks requiring simple reasoning that can be learned in 30 days or less;
> less than occasional tasks requiring good depth perception; a restriction to
> tasks that do not involve hazards; limited coworker contact and no public
> contact due to distraction.

Tr. 15, 48. Plaintiff argues that this "simple, routine tasks" limitation does not incorporate his

"deficiency in concentration, persistence, and pace." Pl.'s Br. 12, ECF No. 13. This Court is not

persuaded.

In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit

joined the Sixth and Eighth Circuits in recognizing that an "ALJ's assessment of a claimant

adequately captures restrictions related to concentration, persistence or pace where the

assessment is consistent with restrictions identified in the medical testimony." The Court held

that an ALJ's limiting instruction of "simple tasks" adequately incorporated an examining

doctor's observations that plaintiff had a "slow pace, both with thinking and her actions" and was

"moderately limited" in her ability to "perform at a consistent pace without an unreasonable

number and length of rest periods." *Id*. at 1173; *see also Howard v. Massanari*, 255 F.3d 577,

582 (8th Cir. 2001) (holding that the ALJ's limiting instruction of "simple, routine, repetitive

work" adequately accounted for "the finding of borderline intellectual functioning."). As in

*Stubbs-Danielson*, the hypothetical limitations posed by the ALJ adequately captured plaintiff's

*moderate* deficiencies in concentration, persistence and pace, and were consistent with the

12 – OPINION AND ORDER

medical testimony.[5] *See also Magallanes*, 881 F.2d at 756–57 ("[T]he ALJ is 'free to accept or

reject these restrictions . . . as long as they are supported by substantial evidence."). Thus, the

ALJ's RFC findings properly incorporated plaintiff's limitations.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED. This case is

dismissed.


IT IS SO ORDERED.


DATED this 27th day of May, 2014.



_____s/ Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**

---

[5] *See, e.g.*, tr. 207 (Dr. Tibbitts noted that "[plaintiff] would not have difficulty understanding and remembering simple instructions . . ."); tr. 231 (Dr. Nicoloff identified plaintiff's social functioning, concentration, persistence, and pace limitations as *moderate*); tr. 255 (Dr. Kennemer concluded that plaintiff's functional work activities should be restricted to "simple, routine tasks with no more than occasional contact with the general public . . . ."); tr. 260 (Dr. Fullilove concluded that plaintiff could "understand, remember and carry out simple and routine tasks, concentrate and attend, and work consistently with the usual workday breaks.).